## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Equal Rights Center, et al. )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>)<br>MOBILITY INC., d/b/a Flexcar, et al. )<br>)<br>Defendants. )<br>) | Civil Action No. 07-cv-01824-JDB |

### NOTICE OF RELATED CASE

Pursuant to Local Rule LCvR 40.5, Defendant, District of Columbia ("the District") through undersigned counsel, gives notice of a related case. Plaintiffs, in the above captioned action allege that together, the District of Columbia, the District of Columbia's Director of Department of Transportation (DDOT), Emeka C. Moneme, and corporate Defendants violated Titles II and III of the Americans with Disabilities Act, 42 U.S.C. § 12181, 12132, as well as the D.C. Human Rights Act, D.C. Code § 2-1401.01. Specifically, Plaintiffs allege that the District Defendants violated the Acts by "providing cost-free parking spaces throughout the District of Columbia" to the corporate Defendant. A true and correct copy of the complaint in the related case, *Equal Rights Center, et al., v. Zipcar, et al.,* Civil Action No. 07-01823 (RMC) is attached hereto and is identical to the above-captioned complaint, except for the name of the corporate defendant.

                   Respectfully submitted,

                   LINDA SINGER

       Attorney General for the District of Columbia

       GEORGE C. VALENTINE
       Deputy Attorney General
       Civil Litigation Division

       _____/s/_____
       ELLEN EFROS,
       Assistant Attorney General [250746]
       Chief, Equity I

       _____/s/_____
BY:  DENISE J. BAKER [493414]
       Assistant Attorney General
       Equity I Section
       Civil Litigation Division
       441 4th Street, N.W.
       Washington, DC 20001
       (202) 442-9887 (telephone)
       (202) 727-0431 (facsimile)
       Email: denise.baker@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EQUAL RIGHTS CENTER<br>11 Dupont Circle NW<br>Suite 400<br>Washington, DC 20036-1226<br><br>ROSEMARY CIOTTI, RN, MSN<br>900 N. Stafford Street, #2322<br>Arlington, VA 22203<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ZIPCAR, INC.<br>717 D Street, NW<br>8th Street Entrance<br>Washington, DC 20004-2812 and<br><br>DISTRICT OF COLUMBIA<br>Office of the Secretary of the<br>District of Columbia<br>441 Fourth Street, NW<br>Suite 1130<br>Washington, DC 20001 and<br><br>EMEKA C. MONEME, DIRECTOR<br>DISTRICT DEPARTMENT OF<br>TRANSPORTATION<br>2000 14th Street, NW, 6th Floor<br>Washington, DC 20009<br><br>　　　　　Defendants. | Docket No._____<br><br>COMPLAINT<br><br>Jury Trial Demanded |

## NATURE OF THE CASE

1.　This action arises out of unlawful discrimination by defendant Zipcar, Inc.

("Zipcar") in the form of policies, practices, and/or architectural barriers that prevent individuals

with disabilities from enjoying the services and facilities offered by Zipcar throughout the Washington D.C. metropolitan area. The Equal Rights Center ("ERC") and Rosemary Ciotti (collectively "Plaintiffs") seek injunctive relief from violations of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* ("ADA"), and money damages and injunctive relief for violations of the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA"). Plaintiffs bring this action under Title III of the ADA, 42 U.S.C. §12181 *et seq.* and the DCHRA against Zipcar. The Plaintiffs also bring this action under Title II of the ADA, 42 U.S.C. §12132 *et seq.* and the DCHRA to challenge the policy and practice of the District of Columbia (the "District") and its Department of Transportation ("DOT") (collectively "District Defendants") for providing cost-free parking spaces throughout the District of Columbia to Zipcar, further enabling this unlawful discrimination against individuals with disabilities.

2. Plaintiffs, by their undersigned counsel, allege the following upon actual knowledge with respect to themselves and upon information and belief, against Zipcar and the District Defendants.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiffs' claims arising under District of Columbia law pursuant to 28 U.S.C. § 1367.

4. Venue properly lies before this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. The ERC is a not-for-profit membership corporation duly organized under the laws of the District of Columbia, with its principal place of business in the District of Columbia. The ERC's membership is composed of individuals, many of whom are persons with disabilities

as defined by the ADA, 42 U.S.C. § 12102(2), and the DCHRA, D.C. Code § 2-1401.02(5A), who wish to use Zipcar's car sharing services and facilities.

6. The ERC seeks to eliminate discrimination on the basis of disability and to promote equal access to all goods, services, facilities, privileges and advantages of public entities and public accommodations. One of the reasons people with disabilities join the ERC is to further these purposes. The ERC pursues these purposes and goals through various means, including research, public education, counseling and conciliation, and litigation. The ERC's organizational purpose is adversely affected by Zipcar's failure to ensure equal access to its car sharing services and facilities and the District Defendants' further enabling of this discrimination through subsidized parking. The ERC is unable to assure its members that they will be able to partake in Zipcar's car sharing services and facilities on an equal level with persons without disabilities. Moreover, its members suffer direct and concrete injuries because they are denied the opportunity to utilize Zipcar's car sharing services and facilities equally with that afforded persons without disabilities.

7. Plaintiff Rosemary Ciotti, a natural person and citizen of the United States, is a resident of Virginia and a member of the ERC. Ms. Ciotti uses a wheelchair because of lupus and resulting neurological dysfunction that substantially limits her in the major life activity of walking. Ms. Ciotti is a person with a disability as defined by the ADA and the DCHRC.

8. Upon information and belief, defendant Zipcar is a privately owned corporation formed under the laws of the State of Delaware, with its principal place of business in the State of Massachusetts, at 25 First Street, 4th Floor, Cambridge, MA 02141.

9. Upon information and belief, Zipcar also has a Washington D.C. office at 717 D Street, NW, 8th Street Entrance, Washington, DC 20004-2812.

10. Presently, Zipcar operates in eight regions across the country, the Ann Arbor, Chapel Hill, Chicago, Massachusetts (composed of Amherst, Boston and Northampton), Minneapolis, New York/New Jersey (composed of New York City/New Jersey and Rochester), San Francisco, and the Washington D.C./Virginia/Maryland regions.

11. Upon information and belief Zipcar has over 470 vehicles available for its car sharing services in the Washington D.C. region. Members can pick up a shared car at numerous strategic and convenient locations throughout the Washington D.C. metropolitan area: Adams Morgan/Mount Pleasant, American University/Tenleytown, Capitol Hill North, Capitol Hill South, Cathedral Heights/Glover Park, Catholic University/Brookland, Cleveland Park, Columbia Heights/Petworth, Downtown/Farragut Square, Downtown/Metro Center, Dupont Circle North, Dupont Circle South, Gallery Place/Penn Quarter, Georgetown, George Washington University/Foggy Bottom, Logan/Thomas Circle, Minnesota Avenue/Benning Road, Northeast, Scott Circle, Shaw/Mount Vernon Square, Southeast/Anacostia, Southwest/Waterfront, U Street/Howard University, Union Station/Judiciary Square, Van Ness, and Woodley Park; Maryland: Princes Georges County, Bethesda/Friendship Heights, Greenbelt, Rockville, Silver Spring, Suitland/Temple Hills, and Takoma Park; Virginia: Alexandria, Ballston/Virginia Square, Clarendon, Courthouse, Falls Church/Fairfax, Pentagon City/Crystal City, Rosslyn, and Springfield; and, at over 40 Metro stops along the Blue Line, Green Line, Orange Line, Red Line and Yellow Line.

12. The District is a municipal entity organized under the Constitution and the laws of the United States of America.

13. Defendant Emeka C. Moneme, in his official capacity, is the Director of the DOT, an agency of the District. The DOT is responsible for managing and maintaining the District's

transportation infrastructure, which includes an initiative to reduce congestion and parking problems through innovative transportation options, such as car sharing.

### STATEMENT OF FACTS

14. Zipcar is a car-sharing service.

15. Individuals wishing to join Zipcar must complete a membership application and pay a fee, which provides them access to shared vehicles of various makes and models.

16. Members also select a rate plan, requiring them to pay for the use of a Zipcar vehicle on an hourly or daily basis or by paying a set monthly fee, or a combination of both.

17. As per the Zipcar website, www.zipcar.com, persons wishing to join Zipcar are required to apply online.

18. However, the Zipcar website contains inaccessible features, and does not comply with website accessibility guidelines.

19. Upon information and belief, after joining Zipcar, a member receives a membership number, a Zipcard, which gives members access to a reserved vehicle, and a Zipcar member manual.

20. Upon information and belief, after a member makes a reservation for a vehicle at one of the above locations, he or she simply retrieves said vehicle from its designated, free parking space. When the member is finished using said vehicle, he or she returns it to the same designated, free parking space.

21. Upon information and belief, since 2005, the District Defendants provided a number of strategically placed curbside parking spaces at many of the above-mentioned locales designated for the exclusive use by car sharing vehicles, at no cost to Zipcar.

22. Ms. Ciotti has a currently valid license to drive in the Commonwealth of Virginia. She has held a valid driver's license for over 37 years. Ms. Ciotti has been using hand control devices while driving a vehicle for 14 years.

23. Ms. Ciotti is a consultant whose business requires her to travel into the District and throughout the metropolitan Washington D.C. area. Access to Zipcar at her home and in the District would make both business and personal travel easier for her.

24. In May 2007, Ms. Ciotti, prior to applying for membership with Zipcar, contacted Zipcar via email regarding the availability of hand controls in its vehicles.

25. Zipcar responded to Ms. Ciotti via email, informing her that Zipcar does not provide hand controls for its vehicles.

26. In September 2007, the ERC also telephoned Zipcar's Washington D.C. office and its Corporate Headquarters to inquire as to the availability of hand controls in its vehicles.

27. Dawn, from the Zipcar Corporate Headquarters, and Brandy, from the Washington D.C. office, both responded that Zipcar does not provide hand controls for its vehicles.

28. Ms. Ciotti needs hand controls in order to be able to operate a vehicle.

29. Hand controls are devices that enable persons who are unable to operate the accelerator and brake pedals with their feet due to physical impairments to drive independently.

30. Generally, hand controls are operated in the following manner: a lever is connected to the pedals and mounted near the perimeter of the steering wheel. Using one's hand to move the lever in one direction will cause the vehicle to accelerate, while moving it in another direction will cause the vehicle to brake. For example, a person with a disability might push the

lever towards the floor to accelerate, and towards the dashboard to brake. A spinner knob may also be attached to the steering wheel to give the driver added control.

31. Upon information and belief, many types of hand controls are available at a retail cost of a few hundred dollars.

32. Upon information and belief, many types of hand controls can be installed in under 15 minutes using simple tools, such as a wrench and screwdriver, and some with no tools at all.

33. The installation of hand controls does not prevent other drivers from using the gas pedal, brake pedal, or steering wheel to operate the vehicle nor does it cause any damage to the vehicle.

34. Zipcar's refusal to make hand controls available effectively would render an attempt by Ms. Ciotti to join Zipcar futile, because she is not able to operate its vehicles.

35. But for Zipcar's refusal to make hand controls available, Ms. Ciotti would have joined Zipcar.

36. The Zipcar "frequently asked questions" section of its website states the following question and answer: "Can someone who is not a member drive a Zipcar?" "Nope. In fact, this is a very big no-no. Anyone behind the wheel must be a Zipcar member for obvious liability and insurance reasons. If you let someone drive who is not a member we will have to cancel your membership."

37. Upon information and belief, Zipcar makes no exception for those who are providing assistance to a disabled member who does not drive -- such as a person with a visual impairment or seizure disorder -- despite said disabled member's willingness to be the financially responsible party under the car sharing agreement.

38. The Zipcar "frequently asked questions" section of its website also states the following question and answer: "Can I take my pet in the car?" "We understand that Fido and Tigger need to go to the vet on occasion. Pets are only allowed into Zipcars in locked pet carriers and members are responsible for the removal of any residual pet hair. Please don't let your furry friend out of their carrier. It's unfair to the other members."

39. The Zipcar member manual makes no exception for service animals, as defined by the ADA, which cannot provide their designated functions if in a locked pet carrier.

40. Defendants' discriminatory conduct has directly injured Ms. Ciotti by denying her the full and equal enjoyment of Zipcar's goods, services, facilities, privileges, advantages, or accommodations.

41. Defendants' discriminatory conduct has directly injured the Equal Rights Center and its members by: (a) frustrating the Equal Rights Center's organizational mission of promoting equal access to facilities and services for disabled persons and eliminating discrimination against such persons in public accommodations in the greater Washington, D.C. metropolitan area; (b) causing the Equal Rights Center to devote scarce resources to identifying and attempting to remedy Defendants' unlawful discriminatory practices; and (c) interfering with the interests of the Equal Rights Center and its members in protecting their rights and the rights of all residents of the greater Washington, D.C. metropolitan area to live and work in a community that is free from illegal discrimination.

## CAUSES OF ACTION

### COUNT I
### Zipcar's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12181 *et seq.*, 28 C.F.R. § 36.101 *et seq.*

Failure to Remove Architectural Barriers

42. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

43. One of the seminal parts of the ADA is Title III, which covers nondiscrimination on the basis of disability by "Public Accommodations and Services Operated by Private Entities." 42 U.S.C. §§ 12181 et. seq.

44. Title III and its regulations cover a wide range of public accommodations, including private car dealerships, car rental agencies and car sharing companies. 42 U.S.C. § 12181(7).

45. Zipcar is a public accommodation within the meaning of the ADA because it is a private entity whose operations affect commerce and is a sales, rental or service establishment.

46. Title III of the ADA applies to Zipcar because it owns, leases to, or operates places of public accommodation.

47. Title III and its regulations prohibit public accommodations, such as Zipcar, from discriminating against disabled persons, including individuals with mobility impairments.

48. As relevant to the present action, discrimination includes "a failure to remove architectural barriers . . . in existing facilities, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a).

49. Under Title III and its regulations, Zipcar, after January 26, 1993, was required to make its facilities readily accessible to and usable by persons with disabilities.

50. Zipcar's vehicles constitute "facilities" under Title III and its regulations, defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property,

including the site where the building, property, structure, or equipment is located." 28 C.F. R. § 36.104.

51. The regulations to Title III specifically list "installing vehicle hand controls" as a step that can be taken to remove an "architectural barrier in existing facilities". 28 C.F.R. § 36.304(b)(21).

52. Removal of the accessibility barriers in Zipcar's vehicles is readily achievable, structurally practicable and/or feasible.

53. Upon information and belief, these barriers are the result of Zipcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the ADA.

54. Because the Zipcar vehicles are strategically located throughout the Washington D.C. metropolitan area, Plaintiffs have attempted to use its services or would use its services, but for their personal knowledge and/or actual notice of the barriers.

55. Failing to remove the barriers in Zipcar's vehicles constitutes unlawful discrimination on the basis of disability insofar as it denies Plaintiffs the full and equal enjoyment of Zipcar's goods, services, facilities, privileges, advantages and/or accommodations.

56. Unless enjoined by this Court, Zipcar will continue to violate the mandates of the ADA.

## COUNT II
### Zipcar's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12181 *et seq.*, 28 C.F.R. § 36.101 *et seq.*

### Failure to Modify Policies and Procedures: Service Animals

57.  Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

58.  Title III and its regulations require a public accommodation such as Zipcar to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

59.  The regulations to Title III specifically state that a public accommodation, such as Zipcar, "shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 26.302(c).

60.  Zipcar's prohibition against carrying animals in the vehicle, except in a locked pet carrier, a policy that would render the service animal ineffectual, runs afoul of Title III and its regulations.

61.  To the extent that compliance with the ADA will require modifications to Zipcar's policies, practices or procedures or other steps necessary to prevent the denial of services to disabled individuals, such modifications will not fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations offered by Zipcar or otherwise result in an undue burden.

62. Zipcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the ADA constitute unlawful discrimination insofar as they deny Plaintiffs the full and equal enjoyment of Zipcar's goods, services, facilities, privileges, advantages, or accommodations.

63. Therefore, Zipcar is in violation of Title III of the ADA and its corresponding regulations and guidelines.

64. Unless enjoined by this Court, Zipcar will continue to violate the mandates of the ADA.

## COUNT III
### Zipcar's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12181 *et seq.*, 28 C.F.R. § 36.101 *et seq.*

### Failure to Modify Policies and Procedures: Alternative Driver

65. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

66. As stated above, Title III and its regulations require a public accommodation such as Zipcar to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

67. Zipcar's blanket policy prohibiting non-members of Zipcar from driving a Zipcar vehicle for a member prevents aides or assistants from driving for a disabled member who cannot do so his or herself, despite said disabled member's willingness to be the financially responsible party, and thereby runs afoul of Title III and its regulations.

68. To the extent that compliance with the ADA will require modifications to Zipcar's policies, practices or procedures or other steps necessary to prevent the denial of services to disabled individuals, such modifications will not fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations offered by Zipcar or otherwise result in an undue burden.

69. Zipcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the ADA constitute unlawful discrimination insofar as they deny Plaintiffs the full and equal enjoyment of Zipcar's goods, services, facilities, privileges, advantages, or accommodations.

70. Therefore, Zipcar is in violation of Title III of the ADA and its corresponding regulations and guidelines.

71. Unless enjoined by this Court, Zipcar will continue to violate the mandates of the ADA.

## COUNT IV
### Zipcar's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12181 et seq., 28 C.F.R. § 36.101 et seq.

### Failure to Provide Access to Website

72. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

73. Title III and its regulations require a public accommodation such as Zipcar to ensure that people with disabilities have "full enjoyment" of the goods, services, facilities, privileges, advantages, or accommodations of a covered accommodation. 42 U.S.C. § 12182(a). Indeed, the statute expressly states that the denial of equal "participation" or the provision of "separate benefit[s]" are actionable under Title III. 42 U.S.C. § 12182(b)(1)(A).

74. Zipcar's company website constitutes a good, service, facility, privilege, advantage, or accommodation provided by Zipcar.

75. Zipcar's failure to provide access to its company website constitutes unlawful discrimination and violates Title III and its regulations, in that individuals with disabilities do not have access to the full enjoyment of, or equal participation in, the company website.

76. Therefore, Zipcar is in violation of Title III of the ADA and its corresponding regulations and guidelines.

### COUNT V
### District of Columbia's Violation of the Americans with Disabilities Act
### 42 U.S.C. § 12132 *et seq.*, 28 C.F.R. § 35.130 *et seq.*

77. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

78. The District Defendants are "public entities" within the meaning of Title II of the ADA.

79. The District Defendants have, since the effective date of the ADA, subsidized Zipcar, a business that is not readily accessible or usable by persons with disabilities, by providing free parking spaces throughout the District of Columbia.

80. The District Defendants' policy and practice of subsidizing Zipcar without regard to whether Zipcar is accessible to people with mobility impairments violates the ADA by excluding them from participation in and denying them the same opportunity as non-disabled persons to the benefits of Zipcar because of their disability.

81. The District Defendants violate Title II of the ADA and its regulations because they have directly or through other arrangements on the basis of disability "aided or perpetuated discrimination against qualified individuals with disabilities by providing significant assistance

to an agency, organization or person that discriminates on the basis of disability" in violation of 28 C.F.R. § 35.130(b)(1)(v).

## COUNT VI
### Zipcar's Violation of the D.C. Human Rights Act
### D.C. Code § 2-1401.01 *et seq.*

82. Plaintiffs adopt and incorporate each and every allegation in this Complaint as if set forth fully herein.

83. Zipcar is a public accommodation within the meaning of the DCHRA as it deals in goods and/or services.

84. The barriers in Zipcar's District of Columbia vehicles constitute an unlawful discriminatory practice because, wholly or partially for a discriminatory reason based on disability, they have the effect of denying Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered by a place of public accommodation.

85. Upon information and belief, these barriers are the result of Zipcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the DCHRA.

86. Zipcar's corporate policies, practices, and procedures and/or the absence of policies, practices, or procedures for enforcing the DCHRA constitute unlawful discrimination because they deny Plaintiffs, wholly or partially for a discriminatory reason based on disability, with the full and equal enjoyment of Zipcar's goods, services, facilities, privileges, advantages, or accommodations.

87. The barriers in Zipcar's District of Columbia vehicles and its corporate policies, practices, and procedures resulting in these barriers and/or the absence of policies, practices, and

procedures for enforcing the ADA and DCHRA, are not necessary for the conduct of Zipcar's business.

88. Plaintiffs have encountered barriers to accessibility, and/or have effectively been denied the opportunity to utilize Zipcar's car sharing services.

89. These barriers have caused Plaintiffs damages in an amount to be determined at trial.

90. Because the Zipcar vehicles are strategically located throughout the Washington D.C. metropolitan area, Plaintiffs have attempted to use its services or would use its services, but for their personal knowledge and/or actual notice of the barriers.

91. Unless enjoined by this Court, Zipcar will continue to violate the mandates of the DCHRA.

## COUNT VII
### District of Columbia's Violation of the D.C. Human Rights Act
### D.C. Code § 2-1401.01 *et seq.*

92. Plaintiffs adopt and incorporate each and every allegation in this complaint as if set forth fully herein.

93. The District Defendants have been subsidizing Zipcar, a business that is not readily accessible or usable by persons with disabilities, by providing free parking spaces throughout the region.

94. The District Defendants' policy and practice of subsidizing Zipcar without regard to whether Zipcar is accessible to people with mobility impairments subjects qualified persons with disabilities to discrimination and excludes them from participation in and denies them the benefits of the services of Zipcar.

95. The District Defendants' policy and practice of subsidizing Zipcar without regard to whether Zipcar is accessible to people with mobility impairments provides qualified persons with disabilities an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, gain or benefit as that provided to others.

96. These actions and inactions constitute violations of the DCHRA.

97. These actions and inactions have caused Plaintiffs damages in an amount to be determined at trial.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

(a) A judgment, pursuant to 28 U.S.C. § 2201, declaring that defendants Zipcar and the District Defendants' conduct as alleged herein violates the laws and regulations of the United States and the laws and regulations of the District of Columbia;

(b) An injunction or writ, pursuant to 28 U.S.C. § 1651, and other grants of equitable authority, ordering defendant Zipcar: (1) to cease violating the ADA and the DCHRA; and (2) to bring its facilities, policies, practices, and procedures into compliance with the ADA and the DCHRA; and ordering the District Defendants to immediately cease and permanently stop subsidizing Zipcar in the form of providing exclusive cost-free parking for its vehicles in violation of the ADA and the DCHRA;

(c) An award of money damages to the Plaintiffs in an amount to be proven at trial;

(d) An award of reasonable attorneys' fees, costs, and other expenditures resulting from bringing this action, pursuant to 42 U.S.C. § 12205 and D.C. Code § 1403.16; and

(e) Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

*[signature: Bo Kay]*

Barbara K. Kagan, Bar No. 252692
Cynthia L. Quarterman, Bar No. 417700
Matthew I. Kepniss, Bar No. 490856
Steptoe & Johnson, LLP
1330 Connecticut Avenue
Washington, DC 20036
(202) 429-3000
(202) 429-3902 (fax)

- and -

*[signature: E. Elaine Gardner]*

E. Elaine Gardner, Bar No. 271262
Washington Lawyer's Committee for Civil Rights
and Urban Affairs
11 Dupont Circle, NW Suite 400
Washington, DC 20036
(202) 319-1000 ext. 131
(202) 319-1010 (fax)

Dated: October 10, 2007